UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SYSCO FOOD SERVICES OF METRO
NEW YORK, LLC,

                   Plaintiff,

      -against-                               08 CV 02958 (BSJ)(JCF)

JEKYLL & HYDE, INC. and SIXTH                  **DECLARATION**
AVENUE FOOD SERVICES LTD.,

                   Defendants.

------------------------------------------------------------------------x

      DONALD R. FINLEY declares the following as true under penalty of perjury:

      1. I submit this declaration in opposition to plaintiff's motion to amend its complaint yet again. I am fully familiar with the facts and circumstances of these matters.

      2. I repeat what I said previously: There is not and has never been a legal entity named Sixth Avenue Food Services Ltd. ("Sixth Avenue"). It has never had a bank account, it does not own any assets, and there is no such entity in the records of the New York Department of State. It was nothing more than an identifier, for bookkeeping purposes, of a location where Sysco shipped and was paid for millions of dollars of goods, namely to the Jekyll & Hyde Club at 1409 Sixth Avenue in Manhattan. Some of these goods were billed to Sixth Avenue, the defendant here, and some to Jekyll & Hyde Club New York LLC ("JHC").

      3. I am the principal of JHC. Sysco has also billed JHC for millions of dollars for goods and has been paid for them. Sysco has also sued JHC in another action in another court. As Sysco well knows (and in any event could easily confirm by checking a variety of public records or by just

-1-

asking us in an interrogatory, rather than making its sole discovery request examination of all of our books and records by a forensic accountant), JHC owns the restaurant at 1409 Sixth Avenue and made the payments for Sixth Avenue and JHC invoices, as JHC was the only actual business entity doing business at that location. Why Sysco has made such a mess of their books is a mystery to us, as is the question of why it has not sued JHC rather than Sixth Avenue, particularly in light of the many times we have pointed out in this case that Sixth Avenue is not the proper entity. But the fact that it has tried to paint me and my companies as operating dishonestly and fraudulently, simply because the company which owns my largest restaurant had two procurement accounts, is simply infuriating.

    4. Sysco knows that this is nonsense, and that we asked it to bill to two accounts at the Sixth Avenue location solely for our internal billing purposes but that we always paid them out of the actual business entity. But, apparently unable keep its books straight so as to prosecute its simple collection case any other way–which, incidentally, is the reason that this dispute arose in the first place–it has turned to painting me and my companies as something they are not. I challenge them to prove that we did not do precisely as we say, scrupulously maintain each restaurant as a separate business entity, and receive goods and pay for them consistent with that practice.

    5. Their own invoices, and defendants' documentary evidence, demonstrate that Sixth Avenue is, for Sysco's purposes, exactly the same as Jekyll & Hyde Club New York LLC. It was an internal matter of bookkeeping that led the restaurant at 1409 Sixth Avenue to bill to separate accounts, but it was not, in any way, something that connected that restaurant (and its ownership entity) to the other restaurants that Sysco seeks to link together or to me as anything but a principal

owner of a corporation or limited liability company, as opposed to someone who is personally liable for those companies' debts.

6. Despite our willingness to deal in good faith to resolve these errors and come up with a reasonably accurate estimate of what is owed, Sysco has brought, I believe, eight different lawsuits, in four different courts, by three different law firms, with duplicate billings and misapplication by them of payments, resulting in thousands of wasted dollars in attorneys' fees to unravel. Solely because of their faulty bookkeeping, it is apparently still impossible for Sysco to demonstrate in their multiple lawsuits what is owed and which, if any defendant owes it.

7. Sysco is seemingly obsessed with trying to impose personal liability upon me, despite the lack of any legal basis to do so, and the lack of any personal guarantee whatsoever of any corporate obligations. In Sysco's first complaint, they produced a purported personal guarantee seeking to impose such obligations. I stated under oath that the signature on this guarantee was a forgery, and that I had never signed any such document. That guarantee has somehow disappeared from this case, and is no longer a basis for any supposed personal liability. Sysco did not assert its existence in its first amended complaint and does not seek to do so in its proposed second amended complaint. One may therefore assume that Sysco acknowledged their reliance on this forgery and withdrew it rather than have the issue litigated.

8. Defendants' accountants and managers, and I, will prove at trial that the corporate entities which own and operate the five separate restaurants to which Sysco delivered goods are separate companies, operating separate restaurants, and that all corporate formalities are strictly and scrupulously observed. There is not one shred of evidence that any restaurant corporation ever paid the debts of another. Parenthetically, I have been advised by my attorneys and accountants that,

even if one company ever did pay a debt of another, as opposed to consistently commingling its books, that would still not establish any sort of joint and several liability. Had that happened, and to the extent that it ever would happen, both company's books would reflect the transaction between the two companies. In any event, even if Sysco may have allocated payments, correctly or incorrectly, among the two separate billing entities in the same restaurant, it does not amount to commingling by the defendants. Those millions of dollars paid over the years by my companies to Sysco were paid solely by the restaurants which incurred the debts, and not by others, and Sysco knows it.

9. Their own invoices demonstrate that Sixth Avenue deliveries were made to, and for the benefit, of the Jekyll & Hyde Club at 1409 Sixth Avenue. Again, that restaurant is owned by Jekyll & Hyde Club New York LLC, which made every single payment on the invoices for goods delivered to the Club at 1409 Sixth Avenue, whether billed to Sixth Avenue or to JHC.

10. Their supposed "smoking gun" check confirms this rather than proving, as they falsely state, that payments were made by any one entity for the benefit of another. Their own notes on that check, which allocated some of the money to Sixth Avenue Food Services invoices and some of it to Jekyll & Hyde Club invoices, prove our case rather than theirs. Plaintiff's suggestion that payments by the company owning one restaurant went to pay for goods delivered to another restaurant are simply false.

11. Sysco and its lawyers apparently think that Sixth Avenue billing represented one location and the Jekyll & Hyde Club New York LLC billing represented another, but this is patently

and provably not the case.[1]  Instead, plaintiff wants something they have no right to, namely to link all of the locations and the principal together under some sort of joint liability theory.  But they are wrong on the facts and the law, and have unfortunately led the Court to the same erroneous conclusion.

12.  Because this Court previously read and gave credence to a document which was presented for the first time by Sysco in a filing to which I had no opportunity to respond, and concluded, as Sysco wanted it to, that I operated a sham business or misled the Court when I stated in a previous declaration that Sixth Avenue was not a legal entity, I will address directly this supposed "proof" that I did business as a non-existent corporation.

13.  In 2001, when Sysco set up a second account for billing of some of the goods sent to the club at 1409 Sixth Avenue, it did so at my request, but that request was merely to form a separate account as a procuring agent, upon the advice of our accountants.  The Jekyll & Hyde Club does a large amount of business in traditional restaurant services but also derives revenue from other food operations, such as catering, events and parties.  The accountants recommended that if it was our intention to continue ordering supplies for these different activities from a single large supplier such as Sysco, that we do so by way of separate accounts, strictly for bookkeeping convenience.  However, all of the payments were always to be made, and actually were made solely by Jekyll & Hyde Club New York LLC. In this way, we could track the food we ordered for restaurant activities

---

[1] The other defendant in this case, Jekyll & Hyde, Inc. took deliveries of goods from Sysco on behalf of a separate restaurant located downtown at 91 Seventh Avenue South, New York, New York, which was owned by that company.  I note that nothing in any of Sysco's many filings in this case alleges that invoices for goods sent to that restaurant were ever paid by JHC, the owner of the uptown location, or vice versa, although we do believe that Sysco shifted liability in their bookkeeping among the uptown and the downtown operating entities.

separately from the food we ordered for those other activities, without having to go through literally thousands of lines on hundreds of invoices.

14. Sysco never cared about this, and in fact I suspect that only after their lawyers tried to make sense of their bookkeeping, in the face of our defenses and assertions in our previous motion to dismiss and in general in this case, did this theory come to light. I also am convinced from reading their submissions that although Sysco knew or should have known (from simply looking at their own invoices) that they delivered goods to one location and were paid by one entity for the two accounts, they and their attorneys may actually believe that the names on these two accounts represented deliveries to two separate restaurants.

15. As for the application itself, I have reviewed it closely, and admit that the signature on it is mine, but the remaining handwriting on the document, including the words "Sixth Avenue Food Services" is definitely not mine. The salesman I dealt with at the time filled it out and may have called it a corporation, but I never authorized him to do so. Until this litigation, I never saw or thought about it again in the nine years after I signed it, and I find their reliance on it now incredible. At the time, the salesman described this application to me as a formality for the files and no more. That is obviously the case: if it were a real application for credit, Sysco surely would have done more than just filling out a form, such as asking for references, or a credit report, or bank accounts, or, certainly, a tax i.d. number to assure themselves of Sixth Avenue's creditworthiness. Had there been any doubt about that creditworthiness, they would have asked for a personal guarantee. But they did not, and I never gave them one. The point is that we already had an account and had passed the real credit tests that Sysco administers prior to extending hundreds of thousands of dollars in

credit - this second account was a bookkeeping device and not a separate entity, restaurant, or anything, and Sysco knows it.

16. All that I intended in signing it was to have Sysco accommodate a request for some separate billing for the restaurant's own record-keeping, knowing full well that the LLC which owns the restaurant would and did pay them millions of dollars over the years. I repeat that there is no such entity as Sixth Avenue Food Services Ltd., and that I did not do business under that name at any time.

Dated: New York, New York
       July 16, 2010

                                              S/
                                        DONALD R. FINLEY